## STANLEY v. WILKERSON.

Opinion delivered March 20, 1897.

WITNESSES—TRANSACTIONS WITH DECEDENT.—Where the plaintiffs in a suit against an administratrix make an assignment for the benefit of their creditors, and a receiver of the assigned property is substituted as plaintiff in their stead, one of the original plaintiffs, though contingently interested in the result of the suit, is not incompetent to testify as to transactions with intestate, under Const. 1874, sched., § 2, providing that, in actions by or against an executor or administrator, neither "party" shall be allowed to testify against the other as to any transactions with the testator or intestate.

EVIDENCE—ACCOUNT BOOKS.—Where the memorandum books of salesmen have been destroyed, and the salesmen are dead, items of account in the journal and ledger, correctly transcribed each day from the salesmen's books by the bookkeeper, and authenticated by his testimony, are admissible as secondary evidence.

Appeal from Woodruff Circuit Court.

GRANT GREEN, JR., Judge.

*P. R. Andrews* and *N. W. Norton* for appellant.

1. It was error to exclude the entries upon the journals of W. P. Campbell & Bro., the bookkeepers being dead, and the original books of entry burned. 57 Ark. 415; 18 Wall. 540, 541.

2. It was error to refuse to allow J. H. Campbell to testify, after his interest in the suit ceased, and he was *no longer a party*. 43 Ark. 307; 46 *id.* 378. Even interest does not disqualify. 46 Ark. 306.

*J. N. Cypert* for appellee.

The entries upon the journal were not original entries, and were not admissible. J. H. Campbell, one of the original plaintiffs could not testify. He was incompetent, and no transfer of claim or interest could render him competent.

BUNN, C. J.   This litigation was commenced in the Woodruff probate court, at its January term, 1892, by the filing of a duly authenticated account against Josephine Wilkerson, administratrix of the estate of her deceased husband, L. B. Wilkerson, which had been disallowed by her as such administratrix.   Upon the hearing, the probate court allowed the account, amounting then to the sum of $829.81, with legal interest from the 26th day of February, 1891, and from this judgment of allowance the administratrix appealed to the circuit court.

Pending the appeal, plaintiffs, W. P. Campbell & Bro., made a general assignment of their property for the benefit of their creditors to T. E. Stanley, who, it appears, was then appointed receiver by the Woodruff circuit court in chancery, to take charge and dispose of said property under the orders and directions of said chancery court.   This fact having been suggested in this cause, then on appeal as stated, the circuit court directed that the receiver be made party plaintiff herein, and that this case proceed in his name.

The claim of W. P. Campbell & Bro., who had been merchants for a long time in Augusta, in said county of Woodruff, was a running mercantile account, covering a period of many years, which seems to have been the subject of a settlement (not payment, however), on the 1st day of December, 1880, when the sum of $1,218.12 appears from the account to have been the balance in favor of W. P. Campbell & Bro.   From this time forward until January 1, 1889, the transaction between the parties continued without interruption, when the balance in favor of the merchants (taking into consideration the balance on the settlement aforesaid) appears to have been the sum of $829.81, the amount claimed.

The matters and things involved were referred to a commissioner to take testimony and state an account between the parties, who made due report of his actions in the premises, showing a balance in favor of W. P. Campbell & Bro. of $834.78, to which report the admin- istratrix filed exceptions; and upon the issues thus made the cause was heard by the court, and judgment was rendered sustaining the exceptions, and a disallowance of the claim *in toto;* and the plaintiff appealed to this court.

The judgment of the circuit court was, in effect, for want of evidence to establish the account, which con- sisted of depositions taken by the commissioner.

During the hearing, in order to prove the correct- ness of the account, plaintiff offered to introduce as a witness James H. Campbell, one of the firm of W. P. Campbell & Bro., who had instituted the proceedings, and in whose name the same had progressed until ordered to proceed in the name of Stanley, the receiver, as aforesaid. Defendant administratrix objected to the competency of James H. Campbell as a witness. The objection was sustained, and he was not allowed to testify, and thereupon judgment was rendered as stated, and this refusal to permit Campbell to testify raises the first question demanding our consideration.

When witness may testify as to transactions with intestate.

The court's ruling was evidently based on the pro- visions of section 2 of the schedule of the constitution of the state, which reads: "In civil actions, no witness shall be excluded because he is a party to the suit, or interested in the issue to be tried: provided that in actions by or against executors, administrators or guard- ians, in which judgment may be rendered for or against them, neither party shall be allowed to testify against the other as to any transactions with or statements of the testator, intestate or ward, unless called to testify thereto by the opposite party; provided, further, that

this section may be amended or repealed by the general assembly."

In construing this provision of the constitution, in *McRae* v. *Holcomb*, 46 Ark. 310, Smith, J., speaking for this court said: "The office of a proviso is to restrain or modify the enacting clause of a statute. Hence the general rule of law, which has always prevailed, and become consecrated almost as a maxim in interpretation of statutes, that when the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. In short, a proviso covers special exceptions only out of the enacting clause; and those who. set up any such exceptions must establish it as being within the words as well as within the reason thereof,"—citing and quoting from *United States* v. *Dickson*, 15 Pet. 165.

In *Potter* v. *National Bank*, 102 U. S. 163, also cited in *McRae* v. *Holcomb*, *supra*, the supreme court of the United States, in construing a federal statute almost identical with our constitutional provision, said: "The first clause of that section shows that there was in the mind of congress two classes of witnesses—those who were parties to the issue, that is, parties to the record; and those interested in the issue to be tried, that is, those who, although not parties to the record, held such relations to the issue that they would lose or gain by the direct legal operation and effect of the judgment. A witness may be interested in the issue without being a party thereto, a distinction which seems to have been recognized in all the statutes to which reference has been made. But whether a party to or only interested in the issue, the witness is not to be excluded in the courts of the United States, upon either ground, except that in actions in which judgment may be rendered

for or against an executor, administrator, or guardian, no party to the action can testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party, or required to testify thereto by the court. The proviso of section 858 excludes only one of the classes described in its first clause,—those who, technically, are parties to the issues to be tried,—and we are not at liberty to suppose that Congress intended the word 'party,' as used in that proviso, to include both those who, according to the established rules of pleadings and evidence, are parties to the issue, and those who, not being parties, have an interest in the result of that issue."

In the case at bar, J. H. Campbell, as one of the firm of W. P. Campbell & Bro., was, of course, interested in the issue to be tried,—at first interested without contingency, and, after the suit was ordered to progress in the name of the receiver, who was also assignee, he was interested on contingency merely; but this court said in the case of *McRae* v. *Holcomb*, *supra* : "But mere interest in the issue to be tried does not disqualify."

Had Campbell been called to testify before Stanley was made a party, and the suit ordered to progress in his name, there is no doubt that he would have been incompetent; for up to that stage of the proceeding he was not only directly interested in the result of the trial of the issue, but was a party to the suit, and of course the suit was then, as it was finally, a suit in which judgment might be rendered for or against the administratrix, she being the defendant therein. After the substitution of the receiver as plaintiff, W. P. Campbell & Bro. were not parties, technically, to the proceeding, not only because the suit had been ordered to progress in the name of the receiver, but really because the subject of litigation was no longer the property of the insolvent

firm, but was absolutely and irrevocably that of the assignee.

But, be that as it may, from the cases we have cited, it is not the interest in the issue to be tried that renders incompetent, but the being a party of record to that issue, which the proposed witness had ceased to be at the time he was called to testify; and a majority of the court is of opinion that his competency or incompetency is to be determined relatively to his status at the time he was proposed and objected to as a witness, without any reference to his previous relation to the record, as he had ceased to be a party to the litigation. The court therefore erred in refusing to permit him to testify upon the ground stated.

The proof of the correctness of that part of the account made previous to December 1, 1880, at which time the balance in favor of plaintiff was $1,218.12, as made before the commissioner, consisted of the account itself, as transcribed in the journal and ledger books of W. P. Campbell & Bro., both of which were in evidence, and also of depositions of persons who had been bookkeepers during the period in which the account that far had run. It was shown that at sometime the store house of the plaintiffs had been destroyed by fire, and with it the blotters and salesmen's memorandum books had also been destroyed. These salesmen's books were of course, technically and strictly speaking, the books of original entries, and the items of account appearing in the journal and ledger (which were saved from the burning), if in truth correct, were merely transcribed from the salesmen's books.

*Account books as evidence.*

Section 2893, Sand. & H. Dig., is not applicable to the case at bar, for its provisions only extend expressly to the books of deceased merchants and traders, but the rule at common law applicable to books of either party is substantially the same as indicated in that statute.

Thus, "at common law, partly from the necessity of the case, because of the incompetency of a party to testify as a witness, entries made by him personally in his own books were considered admissible as evidence forming a part of the *res gestæ*. But to render them admissible, it must be affirmatively shown that the books are books of first or original entry, were regularly kept in the course of business, and that no other books of account bearing upon the same transaction were kept at that time. The entries must have been made at the time they purport to have been made, and contemporaneously with the transactions they describe, or to which they refer.   *   *   *   The formal character of the books, whether ledger or sales-books, is immaterial, so far as their admissibility is concerned, if it be shown that they were fairly and honestly kept, are books of original entry, and are free from material alterations, interlineations, or other circumstances calculated to arouse suspicion." Underhill, Ev. p. 81. The common law rule in some respects has been modified or relaxed, notably as to the matters of entries by the employer and those by the employees. *Id.* p. 85.

The books of the original entry being destroyed, the plaintiff in this case was put to the necessity of showing that they had existed, and had been destroyed; also that fair transcripts from them were in existence, in the shape of the journal and ledger. This, we think, he fairly did by the bookkeepers as to the periods covered by their services, respectively, each one testifying to the mercantile and orderly manner in which their books were kept, and that at the end of each day they each (the bookkeepers, witnesses) transcribed from the salesmen's books the items of that day's sales and transactions, and further that these salesmen were dead. The salesmen's books—the books of original entries—would have been the primary evidence

of the transaction of sales, etc., and the salesmen would have been the proper witnesses to testify to the correctness of these books if living; but the one being destroyed and the other dead, the next best evidence attainable was the secondary evidence of the bookkeepers as to the existence and orderly character of these salesmen's books, and we think it was sufficient to justify a judgment, in the absence of preponderating evidence to the contrary. Further than this we need not go, but thus far it is necessary for us to go, since the evidence seems to have been treated as wholly insufficient to sustain any part of the claim of the plaintiff. So much as to the evidence upon which the exception to the first finding of the commissioner was tried, and from what has been said it is thought the rules of law applicable to other items of account, and the evidence necessary to sustain them, will readily be applied on a rehearing of this cause.

For the errors noted, the judgment is reversed, and the cause remanded for a new trial.