## ALLEN *v.* OZARK LAND COMPANY.

Decided March 12, 1892.

1. *Tax sale—Wrong day.*

Sale of delinquent land for the taxes of 1882 is void if begun and held on the 11th of June, 1883, when it should have been held two days earlier. If it be conceded that section 5782 Mansf. Dig., is constitutional in providing that tax-deeds may not be avoided except for certain causes mentioned, a sale upon a day not fixed by law is "an entire omission" to sell, within such exception.

2. *Chancery practice—Secondary evidence.*

Error in admitting secondary evidence of a material fact in a chancery cause is waived by failure to object to its admission in the lower court.

3. *Practice—Cloud upon title—Costs.*

While a tax-deed which is void on its face does not contitute such a cloud upon the owner's title as will sustain a suit to cancel it, or render the holder of the tax deed liable for costs, a judgment cancelling the tax deed and adjudging costs against such holder is not prejudicial if the costs were properly adjudged against him on account of other land involved in the same suit.

APPEAL from *Clay* Circuit Court in chancery, Eastern district.

JAMES E. RIDDICK, Judge.

*E. F. Brown* for appellant.

1. If the deed was void for the reason that the 11th of June was not the day fixed by law for making sales for non-payment of taxes for 1882, it appeared from the face of the deed that it was void and not a cloud on plaintiff's title. 37 Ark., 644; 67 Am. Dec., 106, note.

2. The court erred in admitting the deposition of Cobbs. Mansf. Dig., sec. 2826; 33 Ark., 833.

*John B. Jones* for appellee.

1.   A tax sale made on a day not fixed by law is void.

2.   Sec. 5782, Mansf. Dig., is invalid.   32 Ark., 131; 42 *id.*, 77; 46 *id.*, 96.   In all tax laws, certain requirements or steps are provided, and their omission is only an irregularity which can be cured by the legislature; or the law may provide that their omission shall not invalidate the sale, for they could have been dispensed with in the first instance.   But the legislature cannot cure jurisdictional defects or cut off fundamental meritorious defenses.   42 Ark., 77; Cooley, Tax., 298–9; 46 Ark., 96; 13 *id.*, 251; 21 *id.*, 580; *ib.*, 581; 32 *id.*, 685; 30 *id.*, 101, 732; 29 *id.*, 489; 31 *id.*, 314; 39 *id.*, 196; 35 *id.*, 509.   The cases in 17 Wis. and the Iowa cases, (16 Iowa, 512; 25 Iowa, 146,) were repudiated in 32 Ark., 131.   34 Fed. Rep., 701, holds that since the passage of sec. 5782, Mansf. Dig., the owner is still entitled to plead a " meritorious defense."

BATTLE, J.   This is an action brought by the Ozark Land Company against John J. Allen, to remove a cloud from its title to two tracts of land in Clay county, described as follows: The east half of the northeast quarter of section 28, and the southeast quarter of section 27, in township 20 north, and in range 9 east.   The plaintiff deraigned title through Robert I. Chester, who purchased from the State of Arkansas, the land having belonged to the State.   The defendant purchased the same land at two sales for taxes, the former tract at a sale on the 11th of June, 1883, for the taxes of 1882, and the latter at a sale for the taxes of 1883.   The former not having been redeemed within the time prescribed by law, the county clerk executed a deed to the defendant for the same, in which it is stated that it was sold on the 11th of June, 1883, at a sale begun on the second Monday in June, 1883.   The latter was also not redeemed, and the county clerk undertook to convey it to the defendant.

Upon the hearing the plaintiff read as evidence the deposition of Paul M. Cobbs, commissioner of state lands, in

which he testified that it was shown by the records in his office that the land in question was sold to and paid for by Chester, on the 1st day of December, 1885, as second-class swamp lands, at the rate of fifty cents an acre; that a certificate of purchase was issued to him for the same; that on the 25th of November, 1884, Chester filed in his office proof of the loss of said certificate and made application for a duplicate; that, upon investigation in his office, it was ascertained that the land had been erroneously sold as second-class swamp land, when in fact it was first-class, and should have been sold at the price of seventy-five cents an acre; that he refused to issue a duplicate certificate until the balance of twenty-five cents an acre due the State was paid; and that when said balance was paid, he, as such commissioner, issued on the 25th of November, 1884, to Chester, a duplicate certificate showing the purchase of the land as first-class swamp land. This deposition was read as evidence without objection.

The court declared the deeds executed to Allen void, and quieted title of plaintiff; and Allen appealed.

The time fixed by law for the sale of lands returned delinquent on account of the non-payment of the taxes of 1882 was two months after the second Monday in April, 1883. Acts of 1883, pp. 265, 266, 293, secs. 128, 129, 226. According to this law the sale should have been begun on the 9th day of June, 1883. Hence the sale to Allen of the east half of the northeast quarter of section 28 was made on a day not authorized by law, and this fact appears in the deed executed to him by the county clerk.

1. Tax sale on wrong day is void.

But the statutes under which the sale and deed to Allen were made, after providing that deeds for the conveyance of lands sold for taxes "shall be signed by the clerk of the county court, in his official capacity, and acknowledged by him before some officer authorized by law to take acknowledgments of deeds," provides: "In all controversies and suits involving title to real property, claimed and held under and by virtue of a deed executed substantially as aforesaid

by the clerk of the county court, the party claiming title adverse to that conveyed by such deed shall be required to prove, in order to defeat the said title, either that the said real property was not subject to taxation for the year (or years) named in the deed, or that the taxes had been paid before the sale, that the property had been redeemed from the sale according to the provisions of this act, and that such redemption was had or made for the use and benefit of persons having the right of redemption, under the laws of this State; *or that there had been an entire omission to list or assess the property, or to levy the taxes, or to give notice of the sale, or to sell the property.*"     Mansf. Dig., sec. 5782.

According to this statute there must be an assessment, a levy of taxes and a sale, or the deed made by the clerk is void.    Literally construed, any assessment, levy of taxes and sale made in any manner, at any time or place, or by any person or court, would be sufficient to sustain the clerk's deed.    But this is not true.    It is obvious that the assessment referred to and required is an assessment by the assessor, and the levy of taxes a levy by the county court, composed of the county judge and justices of the peace, as required by law, and the sale a sale by the collector of taxes.    It is equally obvious that the assessment, levy of taxes and sale referred to are those made by authority of the statutes.

Construed in connection with section 5791 of Mansfield's Digest, its intention is clearer.    That section provides: "All actions to test the validity of any proceeding in the appraisement, assessment or levying of taxes upon any land or lot, or part thereof, and all proceedings whereby is sought to be shown any irregularity of any officer, or defect or neglect thereof, having any duty to perform, under the provisions of this act, in the assessment, appraisement, levying of taxes, or in the sale of lands or lots delinquent for taxes, or proceedings whereby it is sought to avoid any sale under the provisions of this act, or irregularity or neglect of any kind by any officer having any duty or thing to perform under the provisions of this act, shall be commenced within two

years from date of sale, and not afterward." The object of this section (though not the legal effect as construed by this court) was to enable the owner of lands sold for taxes to test the validity of the sale by showing material irregularities, defects, or omissions in the manner in which the assessment was made, or the taxes were levied, or the land was sold. He must do so, says the statute, in two years after the sale, "*and not afterward*"—the time in which he is allowed to redeem. When the two years have expired the purchaser at the tax sale is entitled to a deed, and the clerk is required to execute it on demand. After this the statute provides that a party claiming title adverse to that conveyed by such deeds, in order to defeat the title thereby acquired, shall be required to prove that there had been an entire omission to list or assess the land or to levy the taxes or to sell the land—evidently intending that no advantage shall be taken of those irregularities, defects and omissions which section 5791 intended should be taken advantage of in two years, as before stated, and no more; and did not refer to those omissions to comply with the statutes which show that the assessment or sale was made, and the taxes were levied, without authority; for, in the absence of authority to make an assessment or levy taxes or sell, there cannot, strictly speaking, be an irregular or defective assessment, levy of taxes, or sale; for in that event they are nullities and not irregular or defective tax proceedings.

To illustrate : the judgment of a court of competent jurisdiction cannot be attacked or impeached in any collateral proceedings for errors or irregularities not going to the jurisdiction, however prejudicial they may be. Thus when an administrator desires to sell the lands of his intestate to pay debts, he is required by law to give notice of his intended application to the probate court for an order to sell, yet if the order and sale are made, and the sale is confirmed by the court, the sale cannot be attacked collaterally on account of such failure, because the omission to give notice was but an irregular step in the exercise of jurisdiction. So it is

required that notice be given of the time, place and terms. of such sale when ordered, but if the sale be made and is confirmed by the court, no advantage can be taken of it in a collateral proceeding, because such failure is no more than an irregularity in the exercise of jurisdiction. But suppose the judge and officers of the probate court should meet together at a time not fixed by law for holding court, as in *Graham* v. *Parham*, 32 Ark., 686, and the judge should make an order to sell the lands of a deceased person on the application of the administrator, and the clerk should enter it on the record of that court, it would be void and would be so treated in every proceeding, notwithstanding it was clearly within the jurisdiction of the probate court that they professed to be holding, because they did not constitute a court, but a mere collection of officers. This principle applies directly to the levy of the county taxes, because they must be levied by the county court. It is also applicable to tax sales. For the law fixes the day on which they shall begin, as it does for the courts. The collector cannot legally begin the sale on any other day. He is not clothed with any discretion. The statute confines his authority to sell on a fixed day. If, beginning on that day, he does not sell all the delinquent lands, he can adjourn from day to day until all of them are sold. But if he should begin and sell on a day not authorized by law, the sale would be void, a nullity, and would have no more legal efficacy than it would have had it been made by any other person. It would be without the authority or sanction of law.

We have thus far treated the statute in question as valid, but we do not mean to say or decide that it is. But conceding it to be constitutional, we find that the sale made on the 11th of June, 1883, was void, and that the deed of the clerk conveying to Allen the land sold did not validate it ; and that there is no necessity for considering the validity of the statute.

2. Chancery practice as to secondary evidence.     The circuit court found that the southeast quarter of section 27 was not subject to sale or forfeiture on ac-

count of the non-payment of taxes until after the 24th
day of November, 1884. The appellant insists that the
court erred in so finding, because there was no evidence
proving that fact, except the deposition of Paul M. Cobbs,
state land commissioner. It is contended that the testimony
of Cobbs as to the contents of the records in his office was
not competent, because the records or certified copies there-
of were the best evidence of their contents. This is true.
But it does not appear in the record in this case that there
was any objection to its admission as evidence. Appellant
had the right to waive the production of the records or cer-
tified copies of the same, and accept proof of their contents,
and did so by his silence. Failing to object, he thereby
lulled the appellee into repose and deprived it of the oppor-
tunity of offering better evidence. Had the testimony of
Cobbs been incompetent for any purpose or on any condi-
tion, the circuit court should have given it no consideration,
and in weighing the evidence should have excluded it on its
own motion. In such cases the failure of a party to object
does not add to the probative force of the incompetent tes-
timony; but in case of secondary evidence, if he waives the
conditions on which its admissibility depends, he thereby
gives to it its full force as evidence. This is the rule in actions
at law. *Frauenthal* v. *Bridgeman,* 50 Ark., 348. The same
rule prevails in actions in equity. 3 Greenleaf on Evidence
(14th ed.), sec. 357; *Barraque* v. *Siter,* 9 Ark., 548. Having
failed to object to Cobbs' testimony below, appellant cannot
object to it here. *Eden* v. *Earl Bute,* 1 Brown's P. C., 465; 2
Daniell's Ch. Pl. and Pr. (4th ed.), pp. 1504, 1127; 1 Barb.,
Ch. Pr. (2d ed.), pp. 419, 386.

But it is insisted that the court erred in cancelling the
deed by which the clerk conveyed to Allen the land sold for
taxes on the 11th of June, 1883; for if the deed was void
because it showed on its face that the sale was made on a
day not fixed by law, it cast no cloud over the title of the
appellee to the land therein described. It is true that the
courts have often held such to be the law, for the reason,

3. Practice as-
to removing.
cloud upon title.

"that can never be considered a legal cloud which cannot for a moment obstruct the unaided rays of legal science when they are brought to bear upon the supposed obscurity." *Chaplin* v. *Holmes*, 27 Ark., 414; *Crane* v. *Randolph*, 30 Ark., 579; *Lawrence* v. *Zimpleman*, 37 Ark., 643. But the cancellation of Allen's deed was not prejudicial to appellant. The deed whereby the other tract of land in question was conveyed to Allen being valid on its face, the court did not err in failing to dismiss the action and rendering judgment against Allen for costs.

Judgment affirmed.