FULLER v. WILKINSON.

4-5428                                    128 S. W. 2d 251

Opinion delivered April 17, 1939.

J. T. *Cheairs*, for appellant.
*Carneal Warfield*, for appellee.

SMITH, J. The tract of land here in controversy was sold to the state in 1931 for the nonpayment of the 1930 taxes due thereon. Included in the taxes for the nonpayment of which the land was sold was the county road tax of three mills. This road tax had not been voted by the electors at the preceding general election, and there was, therefore, no authority for the extension of this tax against the land.

Under the authority of act 119 of the Acts of 1935, p. 318, this tax sale to the state was confirmed in a decree rendered April 6, 1936, and more than one year thereafter this suit in ejectment was brought by the purchaser of the state's title. Appellant, the owner of the land at the time of the tax sale, answered that the confirmation decree was void, and the cause was transferred to equity. The chancery court upheld the confirmation decree, for the reason that it had not been attacked within one year after the date of its rendition, and this appeal is from that decree.

For the reversal of this decree it is insisted that the confirmation decree was ineffective to cure the defect in the tax sale, the defect being jurisdictional, inasmuch as there was no authority in law for the extension of the road tax.

This act, 119 of the Acts of 1935, is similar to and in some of its recitals is identical with act 296 of the Acts of 1929, p. 1235, indicating that the act 296 served as a model in drafting act 119. The chief difference between the acts appears in § 9 of each of the acts. Section 9 of act 296 provides that "the decree of the court confirming the sale to the state shall operate as a complete bar against any and all persons who may thereafter claim said land in consequence of any informality or illegality

in the proceedings'' (leading up to and incident to the tax sale). The same numbered section appearing in act 119 omits the words ''any informality or illegality'' appearing in the first act, and provides that ''the decree of the chancery court confirming the sale to the state of such real property, as aforesaid, shall operate as a complete bar against any and all persons, firms, corporations, *quasi*-corporations, associations, and trustees who may thereafter claim said property (sold for taxes) except as hereinafter provided; and the title to said property shall be considered as confirmed and complete in the state forever,'' with a saving clause in favor of infants and certain persons under other disabilities during the continuance of the disability and until one year after its removal.

It is obvious that something was intended by act 119 which act 296 did not accomplish, otherwise there was no point in passing the later act, and that this something was to make the confirmation decrees rendered pursuant to act 119 impervious to attack upon any ground, which a decree of confirmation could cure save only by the persons under one of the disabilities there enumerated.

We have had frequent occasion to construe this act 296 and the effect of confirmation decrees rendered pursuant to its provisions. In the first of those cases, that of *State* v. *Delinquent Lands,* 182 Ark. 648, 32 S. W. 2d 1061, it was held (to quote the headnote in that case) that ''Acts 1929, No. 296, providing for confirmation of lands sold to the state, and that the decree of confirmation in favor of the state shall be a bar against any and all persons who may thereafter claim said lands in consequence of 'any informality or illegality' in the forfeiture proceeding, does not mean that the confirmation shall be a bar against claimants of land on other grounds.'' The later cases are also to the effect that confirmation decrees rendered pursuant to the provisions of act 296 cured only informalities and illegalities.

Now, act 119 is not thus restricted, and we think the effect of confirmation decrees rendered pursuant to its provisions is to cure all tax sales where there was not

lacking power to sell, that is, all sales for taxes which were due and had not been paid.

It is argued that not even this limitation may be placed upon the effect of decrees confirming tax sales under act 119, which are not attacked within one year after the date of their rendition, for the reason that the act provides that period of time within which the decrees may be attacked, and that after the expiration of this period of limitation the sales may not be attacked upon any ground.

This view would, no doubt, be correct if it be true that act 119 should be construed as enacting a statute of limitation allowing one year within which the confirmation decrees may be attacked, and making them impervious to attack for any reason after that time.

This is the effect of the opinion in the case of *Ross v. Royal*, 77 Ark. 324, 91 S. W. 178. That opinion points out the distinction between such legislation as § 5061, Kirby's Digest, (§ 8925, Pope's Digest) and § 7114, Kirby's Digest, (§ 13883, Pope's Digest).

The last mentioned section provides that "all actions to test the validity of any proceeding . . . in the sale of lands or lots delinquent for taxes, or proceedings whereby it is sought to avoid any (tax) sale . . . , shall be commenced within two years from the date of sale, and not afterward."

Cases were cited in *Ross v. Royal, supra*, holding that this statute begins to run from the date of sale, and applies only to mere irregularities in and technical objections to tax sales, and not to jurisdictional or fundamental defects in the sales which render them absolutely void; whereas § 5061, Kirby's Digest, was there upheld as a statute of limitation, which, when it was applicable and had run, concluded any inquiry into the validity of the sale.

This § 5061, Kirby's Digest, (§ 8925, Pope's Digest) provides that "no action for the recovery of any lands, or for the possession thereof against any person or persons, their heirs and assigns, who may hold such land by virtue of a purchase thereof at a sale by the collector, or

commissioner of state lands, for the nonpayment of taxes, or who may have purchased the same from the state by virtue of any act providing for the sale of lands forfeited to the state for the nonpayment of taxes, or who may hold such land under a donation deed from the state, or who shall have held two years actual adverse possession under a donation certificate from the state, shall be maintained, unless it appears that the plaintiff, his ancestors, predecessors, or grantors, was seized or possessed of the lands in question within two years next before the commencement of such suit or action.''

In the opinion in this case of *Ross* v. *Royal* it was said: ''The statute under consideration is plainly a statute of limitation, and begins to run, not from the date of the sale, but from the date actual possession is taken under the deed. *Haggart* v. *Ranney,* 73 Ark. 344, 84 S. W. 703; *McCann* v. *Smith,* 65 Ark. 305, 45 S. W. 1057. Actual possession of land taken and held continuously for the statutory period of two years under a clerk's tax deed or donation deed issued by the Commissioner of State Lands bars an action for recovery, whether the sale be merely irregular, or void on account of jurisdictional defects.

''In *Turner* v. *New York,* [168 U. S. 90, 18 S. Ct. 38, 42 L. Ed. 392] the Supreme Court of the United States held that the statute of New York 'providing that deeds from the Comptroller of the State of Lands in the forest preserve sold for nonpayment of taxes shall, after having been recorded for two years, and in any action brought more than six months after the act takes effect, be conclusive evidence that there was no irregularity in the assessment of the taxes, is a statute of limitation, and does not deprive the former owner of such lands of his property without due process of law.'' In *Saranac Land & Timber Co.* v. *Comptroller,* [177 U. S. 318, 20 S. Ct. 642, 44 L. Ed. 786] Mr. Justice McKenna, delivering the opinion of the court, in summing up the effect of the decision in *Turner* v. *New York, supra,* says: 'The decision establishes the following propositions:

"1. That statutes of limitations are within the constitutional power of the legislature of a state to enact.

"2. That the limitation of six months is not unreasonable.

"The New York Court of Appeals in *Meigs* v. *Roberts,* 162 N. Y. 371, 56 N. E. 838, 76 Am. St. Rep. 322, had the same statute under consideration, the question being whether it applied to mere irregularities or jurisdictional defects, and in discussing the difference between the effect of curative statutes and statutes of limitations said: 'But there may be in legal proceedings defects which are not mere informalities or irregularities, but so vital in their character as to be beyond the help of retrospective legislation; such defects are called jurisdictional. This principal does not apply to a statute of limitation, for such a statute will bar any right, however high the source from which it may be deduced, provided that a reasonable time is given a party to enforce his right.'

"We do not think that it can be said that the period of two years fixed by the statute is unreasonable. Under it no action can be barred in less time than four years after the tax sale, because two years time is given for redemption before a deed can be executed completing the sale, and there must be actual adverse occupancy for the full period of two years under the deed."

The tax sale involved in that case was made on a day not appointed by law, yet, under § 5061, Kirby's Digest, which was construed as a statute of limitation, the sale was held impervious to attack, although it had been previously held in the case of *Allen* v. *Ozark Land Co.,* 55 Ark. 549, 18 S. W. 1042, that a sale for taxes on a day not authorized by law would be regarded as "an entire omission to sell" within the provisions of the law regulating such sales.

If, therefore, section 9 of act 119 is to be construed as enacting a statute of limitation requiring confirmation decrees to be attacked within one year after the date of their rendition, and not later, the decree here under review must be upheld, as it was not attacked within that

time. But, as was pointed out in the portion of the opinion in the case of *Ross* v. *Royal, supra,* which we have copied, such legislation, to be upheld as a statute of limitation, must provide a reasonable period of time within which, after the statute has begun to run, the person to be concluded by its operation may act to prevent the bar of the statute from falling.

We copy § 9 of act 119 in full: "Section 9. The decree of the chancery court confirming the sale to the state of such real property, as aforesaid, shall operate as a complete bar against any and all persons, firms, corporations, *quasi*-corporations, associations, and trustees who may thereafter claim said property except as hereinafter provided; and the title to said property shall be considered as confirmed and complete in the state forever; saving, however, to infants, persons of unsound mind, imprisoned beyond the seas, or out of the jurisdiction of the United States, the right to appear and contest the state's title to said land within one year after the disabilities are removed. The owner of any lands embraced in the decree may, within one year from its rendition, have the same set aside in so far as it relates to the land of the petitioner by filing a verified motion in the chancery court that such person had no knowledge of the pendency of the suit, and setting up a meritorious defense to the complaint upon which the decree was rendered. The chancellor shall hear such defense according to the provisions of this act as though it had been presented at the term in which it was originally set for trial."

Does this act allow any period of time, reasonable or otherwise, within which all affected landowners may show cause why the decree should not become final and impervious to attack? The act provides that "the title to said property shall be considered as confirmed and complete in the state forever," that is, at the time of and upon the date of the rendition of the confirmation decree. It appears to be the purpose and effect of the act to give finality and conclusive effect to the decree of confirmation, not one year after the date of its rendition, but upon its rendition. It is true that certain owners, who can

make the showing that they had no knowledge of the pendency of this suit and who have a meritorious defense to the complaint upon which the decree was rendered, are allowed one year for that purpose, but only such persons are allowed that time. All others are concluded from the date of the rendition of the decree, and as to them the decree is as final upon the date of its rendition as it ever becomes.

We held in the recent case of *Hirsch* v. *Dabbs and Schuman* v. *Mivelaz*, 197 Ark. 756, 126 S. W. 2d 116, that it was a meritorious defense, within the meaning of the act, for the owner to show that the tax sale was void for any reason, whether the defect in the tax sale was jurisdictional or not. Except as against those owners who are unaware of the pendency of the confirmation suit, the decree of confirmation is conclusive from the date of its rendition as to all defects which the decree could cure, so that the statute is not one of limitations, as it did not give a year or any other period of time within which the confirmation decree might be attacked except only as to those owners who were unaware of the pendency of the confirmation suit and are able to show that the original tax sale was invalid.

We conclude, therefore, that the confirmation decree has not been rendered impervious to attack through a statute of limitations.

We think the purpose of this act 119, and of the decree of confirmation rendered pursuant to its provisions, was to cure any and all defects in the sale not related to the power to sell, and that it was beyond the prerogative of the legislature to supply this lack of power, and that the taxing officers were unauthorized to sell land for taxes which were not chargeable against the land. We think this is the effect of the opinion of this court in the case of *Radcliffe* v. *Scruggs*, 46 Ark. 96.

The case of *Caldwell* v. *Martin*, 55 Ark. 470, 18 S. W. 633, involved the effect of a confirmation decree rendered under the authority of the revised statutes. In that case Judge Hemingway said that legislation was valid which authorized the confirmation of tax sales which were absolutely void, but he also said: "Whether

a distinction can be taken between sales that are void for a fundamental defect, and such as are void for a departure from a statutory provision not fundamental, and, if so, whether the curative powers of a decree are confined to sales of the latter class, is a question we need not determine in this cause.'' In that case there had been a failure to advertise the land for sale, but it was there held that the confirmation decree cured this defect, for the reason that it was within the power of the legislature to authorize a sale for taxes without advertisement of the sale. But it was not and is not within the power of the legislature to authorize a sale for taxes which are not due and which are not a charge upon the land. And while it is true, as appears from what we have already said, that the legislature has the power to enact such a statute of limitations, under which, when it has run and the bar thereof has fallen, a decree of confirmation may not be attacked for any reason, it is also true that the legislature has not, by act 119, enacted such a statute of limitations.

The decree of confirmation is, therefore, open to the attack here made upon it, that is, that the tax sale which it undertook to cure was void for the want of power to make it, the land having been sold for taxes not due on the land.

The decree must, therefore, be reversed, and the cause will be remanded with directions to permit appellant landowner to redeem, as he attempts to do.

Smith, J. (on rehearing). Appellee cites, in support of his petition for rehearing, cases which, like *Burcham* v. *Terry*, 55 Ark. 398, 18 S. W. 458, 29 Am. Ct. Rep. 42, discuss the effect of sales made pursuant to decrees rendered under the authority of Act 39 of the Acts of 1881, pages 63 *et seq.*, commonly known as the Overdue Tax Act. It is insisted that we have not followed the principle announced in those cases, and that the instant case impairs their authority. We have no such intention, and we think the original opinion in this case does not accomplish that result.

In the case of *Burcham* v. *Terry, supra,* Judge Hughes, speaking for the court, said: "The chancery court that rendered the decree under which they were sold to the state had jurisdiction of the subject matter of the suit, which was a proceeding *in rem.* That illegal taxes had been assessed against the lands, and that they had been assessed for taxation for years when they were not liable for taxes, were matters of defense which might have been shown in the overdue tax suit, but they cannot be shown in a collateral suit. These matters might have been litigated in the overdue tax suit, and the decree in that suit is conclusive here as to all matters that could have been litigated in that suit except the question of jurisdiction. *Mayo* v. *Ah Loy,* 32 Cal., 477, 91 Am. Dec. 595. This case falls within the principle decided in *Mc-Carter* v. *Neil,* 50 Ark. 188, 6 S. W. 731, and *Williamson* v. *Mimms,* 49 Ark. 336, 5 S. W. 320. 1 Black on Judgments, § 245."

An examination of this Overdue Tax Act will disclose that it did not attempt to give finality to the decrees rendered pursuant to its provisions at the time of their rendition, nor did it attempt to give finality to sales which such decrees ordered, even after they had been made and confirmed. Section 11 of this Overdue Tax Act provides that "The owner of any lands thus sold may redeem from the purchaser at any time within the period fixed by law for the redemption of lands sold for taxes, on the payment of the sums required to be paid by law in making redemption in other cases, and on payment of the costs of the proceedings had under this act, in so far as they may have been adjudged against the lands sought to be redeemed." The two years thus allowed for redemption in the Overdue Tax Act became in effect and of the nature of a statute of limitation, making the sales impervious to attack after the expiration of the two years allowed for redemption, upon any ground, save only the jurisdiction of the court ordering and confirming such sales.

The original opinion in this case pointed out, however, that Act 119 of the Acts of 1935 was not to be con-

strued as enacting a statute of limitation requiring confirmation decrees rendered pursuant to its provisions to be attacked within one year after the date of their rendition, and not later. Act 119 did not allow any and all persons a year, or any other time, within which to redeem after the rendition of the confirmation decree. As was said in the original opinion, "It appears to be the purpose and effect of the act (119) to give finality and conclusive effect to the decree of confirmation, not one year after the date of its rendition, but upon its rendition," although it was provided that certain owners, who could make the showing that they had no knowledge of the pendency of the suit and who had a meritorious defense to the complaint upon which the decree was rendered, were allowed one year within which to make that showing. It was not, therefore, a statute of limitation, and did not cure tax sales where the power to make them was lacking.

Act 119 of the Acts of 1935 differs from the Overdue Tax Act in this very material respect. The original opinion here recognized the power of the General Assembly to enact such a statute of limitation. Had it done so, decrees rendered pursuant to its provisions would, like decrees rendered under the Overdue Tax Act, have been impervious to any attack, save only that the court was without jurisdiction to render the decree. The case of *Burcham* v. *Terry* and other cases called to our attention would, in that event, have application, but, for the reasons herein stated, they do not apply.